J-S11045-15

2015 PA Super 133

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
                                :           PENNSYLVANIA
                 Appellant      :
                                :
           v.                   :
                                :
KENNETH F. SODOMSKY,            :
                                :
                 Appellee       :   No. 870 MDA 2014

Appeal from the Order entered on April 25, 2014
in the Court of Common Pleas of Berks County,
Criminal Division, No. CR-06-CR-0001025-2005

BEFORE:  PANELLA, OTT and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.:                    **FILED JUNE 05, 2015**

The Commonwealth of Pennsylvania appeals from the Order granting

the suppression Motion filed by the defendant, Kenneth F. Sodomsky

("Sodomsky").[1]  We affirm.

In a prior appeal, this Court summarized the relevant history of this

case as follows:

> Richard Kasting ["Mr. Kasting"] was the senior sales assistant in
> the technology department of the Circuit City [s]tore located on
> Woodland Road, Wyomissing, Berks County[, Pennsylvania].  Mr.
> Kasting testified that on October 15, 2004, [Sodomsky] came to
> Circuit City and asked Mr. Kasting to install an optical drive and
> DVD burner into his computer.  The work order that [Sodomsky]
> executed that day authorized Circuit City to install and configure
> the optical drive unit and DVD in his desktop computer.

---

[1] As required to take an appeal as of right under Pa.R.A.P. 311(d), the
Commonwealth has certified that the suppression court's Order substantially
handicapped the Commonwealth's ability to proceed in this case.

In accordance with store practice, Mr. Kasting summarized to [Sodomsky] "what is done during the installation." N.T. Suppression Hearing, 9/28/05, at 16. [Sodomsky] was informed that as part of the installation process, the installer would "have to make sure [that the DVD burner] works." *Id.* at 17. There is no indication that [Sodomsky] asked how the DVD burner would be tested or in any manner restricted what procedure could be utilized to confirm the burner's operability. [Sodomsky] requested that the work be performed on an expedited basis, and Mr. Kasting instructed him to return in approximately one hour.

Toby Werner was in the middle of the installation process when Stephen Richert ["Mr. Richert"], the head of personal computer repairs at Circuit City, arrived. Mr. Richert testified that the DVD drive was installed when he arrived in the department, but the software had not yet been installed. Mr. Richert explained that all DVD burners and players were accompanied by software.[FN] Mr. Richert testified specifically that at Circuit City, with "every installation" of the hardware, "any supplementary software" was installed both as a courtesy "and to make sure when it leaves the store, we can guarantee that it is working." *Id.* at 21.

---

[FN] [Sodomsky] maintains that he did not request installation of the DVD software. However, it is clear that Circuit City could not test the hardware without installing the software and always installed any software accompanying a hardware installation. [Sodomsky] was told that the hardware would be tested.

---

After the software was installed, Mr. Richert performed a general search for a video [file on Sodomsky's computer] to test the new DVD drive. More specifically, he testified as follows:

> Well, after we installed the software, we did a generic search of the PC where you click on the start menu, you click on search, and this being the [W]indows XP, a search box comes up and it is custom made to this operating system. In this case, this system, it's about half way down the screen on the left-hand side there's a search, and you can enter—in this case, you could enter a specific name of a file that you're looking for and find it.

We weren't looking for anything specific, so we did a generic search. …

\*　　\*　　\*

… [I]n this case, we wanted to make sure that all types of files were working fine so that you wouldn't get any type of errors….

*Id.* at 22-23.

Mr. Richert testified that once the search button was activated for a given object, the computer automatically loaded the requested files onto the screen, which continued to enlarge by itself. Thus, after the search was initiated, Mr. Richert did not manipulate the computer further to see the entire list of videos. *Id.* at 30-31. The first few video titles that appeared from [Sodomsky's] video list were innocuous. However, as the video log continued to compile on the computer screen, which occurred without any human intervention, some of the files appeared to be pornographic in nature due to their titles[,] which included masculine first names, ages of either thirteen or fourteen, and sexual acts. Mr. Richert clicked on "the first one" that appeared questionable, and the video contained the lower torso of an unclothed male, and when a hand approached the male's penis, Mr. Richert immediately stopped the video. *Id.* at 24. Mr. Richert contacted his manager and then telephoned the Wyomissing police.

During cross-examination, Mr. Richert admitted that he had been told by a Pennsylvania State Police Officer to contact police if he ever ran across what appeared to be child pornography while at work. At the time, Mr. Richert was taking a course at a local college and hoped to enter the law enforcement field.

Wyomissing Police Detective George Bell ["Detective Bell"] and two other police officers responded to the call and viewed the same video clip [while at the Circuit City store]. When [Sodomsky] arrived to retrieve his computer, Detective Bell informed him that his computer was being seized because police suspected that it contained child pornography. [Sodomsky] responded that he knew what they had found and that his "life

was over." *Id.* at 87. Police took the computer to the police station, obtained a warrant to search it, and discovered child pornography.

*Commonwealth v. Sodomsky*, 939 A.2d 363, 364-66 (Pa. Super. 2007) (one citation omitted; footnote in original).

On March 11, 2005, Sodomsky was charged with two counts of sexual abuse of children, and one count of obscene and other sexual materials and performances.[2] Subsequently, Sodomsky filed an Omnibus Pre-trial Motion to suppress the evidence seized from his computer. After a hearing, the trial court granted the suppression Motion, after which the Commonwealth filed an interlocutory appeal to this Court.

On appeal, the Commonwealth argued that

the trial court erred in concluding that [Sodomsky] retained a privacy interest in the computer because he volitionally relinquished *any expectation of privacy* in that item by delivering it to Circuit City employees knowing that those employees were going to install and test a DVD device….

*Id.* at 366 (emphasis added). A panel of this Court agreed, in part, with the Commonwealth's contention. *Id.* Reversing the suppression court's Order, the panel reasoned that, "when an individual evidences an intent to relinquish control over personal property, he or she has abandoned a privacy interest in property and cannot object to any ensuing search of the item by police." *Id.* In so holding, the panel focused solely upon Sodomsky's expectation of privacy:

---

[2] 18 Pa.C.S.A. §§ 6312(d), 5903(a)(3).

> The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question *so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.*

*Id.* at 366-67 (emphasis added) (quoting **Commonwealth v. Shoats**, 366 A.2d 1216, 1220 (Pa. 1976)). The panel additionally applied the Pennsylvania Supreme Court's holding in **Commonwealth v. Hawkins**, 718 A.2d 265 (Pa. 1998), explaining that in **Hawkins**,

> the defendant handed an item to another individual, who then placed it in his mouth. Police seized the individual and extracted the property, which consisted of illicit drugs. Our Supreme Court refused to allow the defendant to object to the seizure of the drugs, noting that under current Fourth Amendment jurisprudence, a defendant cannot object to a search unless he establishes a legitimate expectation of privacy, "in the area searched or the effects seized" and that such interest must also be sanctioned by society as reasonable and justifiable." [**Hawkins**,] … 718 A.2d at 267. … [A] "legitimate expectation of privacy is absent where an owner or possessor meaningfully abdicates his control, ownership or possessory interest" in his personal property. *Id.* … at 267. …

**Sodomsky**, 939 A.2d at 367. Ultimately, the panel concluded that Sodomsky had no reasonable expectation of privacy because he had "abandoned" his computer, for one hour, for the installation of a DVD drive. *Id.* at 369. Accordingly, the panel reversed the suppression court's Order, and remanded for further proceedings.[3]

---

[3] The Pennsylvania Supreme Court denied allowance of appeal, and the United States Supreme Court denied Sodomsky's Petition for *Certiorari*. **Commonwealth v. Sodomsky**, 962 A.2d 1196 (Pa. 2008), **cert. denied,** 556 U.S. 1282 (2009).

- 5 -

On remand, Sodomsky filed a Petition to introduce new evidence, claiming that such evidence was unavailable to the defense prior to the evidentiary hearing on his suppression Motion. The trial court issued a Rule to Show Cause why the Petition should not be granted, and scheduled an evidentiary hearing. At the hearing, Sodomsky presented two experts, who testified about industry standards and the methods used by Mr. Richert to install the DVD burner. First, William Scott Ardisson testified that opening the computer's video files was not a proper method for testing the installation of a DVD burner. N.T., 2/15/11, at 15. Next, Charles Mance testified that the methods used by Mr. Richert to test the drive were not consistent with industry standards. *Id.* at 56. Based upon Sodomsky's new evidence, the suppression court again found that Sodomsky had a reasonable expectation of privacy in the digital data on his computer. Therefore, on March 22, 2011, the suppression court granted Sodomsky's suppression Motion. Once again, the Commonwealth appealed the suppression court's ruling.

During its second appeal, the Commonwealth argued, *inter alia*, that the trial court had erred in granting suppression "because [Sodomsky] 'failed to establish that he retained any expectation of privacy in his computer after he turned it over to Circuit City employees.'" **Commonwealth v. Sodomsky**, 47 A.3d 1257 (Pa. Super. 2012) (unpublished memorandum at 10) (quoting Commonwealth's Brief at 17)). The panel agreed, holding that

> [a]fter careful review, we conclude that none of the evidence presented at the second suppression hearing alters this Court's previous conclusion that [Sodomsky] relinquished control of the video files on his computer when he took the computer to Circuit City to install a DVD burner[,] and thereby abandoned his privacy interest in the files….

*Id.* (unpublished memorandum at 13). Based upon a theory of abandonment, the panel concluded that "the trial court erred in finding [that Sodomsky] retained a legitimate expectation of privacy in the video files." *Id.* (unpublished memorandum at 14). The panel reversed and remanded for further proceedings.[4] *Id.*

On remand from this Court, on December 9, 2013, Sodomsky filed a Petition to Re-Open Suppression Hearing based on Intervening Change of Law, *i.e.*, the United States Supreme Court's decision in **United States v.**

---

[4] The Pennsylvania Supreme Court again denied allowance of appeal. **Commonwealth v. Sodomsky**, 63 A.2d 1246 (Pa. 2013). Sodomsky's subsequent Petition for *Certiorari* to the United States Supreme Court also was denied. **Sodomsky v. Pennsylvania**, ___ U.S. ___, 134 S. Ct. 212 (2013).

*Jones*, 565 U.S. ___, 132 S. Ct. 945 (2012).[5]  The suppression court granted Sodomsky's Petition, and, after a hearing, again granted Sodomsky's suppression Motion, based upon the *Jones* decision. Thereafter, the Commonwealth filed the instant timely appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

The Commonwealth now presents the following claims for our review:

a. Whether the trial court erred by re-opening the suppression hearing in this case since *Jones* … was decided before the Superior Court made its decision on the last appeal, before the [Pennsylvania] Supreme Court denied *allocatur*, and before the U.S. Supreme Court denied [*certiorari*] in the last appeal?

b. Whether [Sodomsky] has identified any intervening changes in the law that would have affected the resolution of the issues raised by [Sodomsky] during the prior appeal in this case?

c. Whether the trial court erred in holding that law enforcement officers interfered with the possessory interest in [Sodomsky's] computer, or engaged in a physical intrusion of this computer property to the extent that they committed a trespass for the purposes of obtaining information, thereby violating [Sodomsky's] Fourth Amendment rights[?]

Brief for the Commonwealth at 5.

---

[5] On January 23, 2012 (one week before the scheduled Superior Court oral argument for Sodomsky's second appeal, but after appellate briefs had been filed), the United States Supreme Court filed its decision in *Jones*.  The Superior Court's Memorandum Opinion did not discuss the applicability of *Jones*.  Rather, the decision discussed only Sodomsky's lack of a reasonable expectation of privacy in the data on his computer.  *Sodomsky*, 47 A.3d 1257 (unpublished memorandum at 14).

The Commonwealth first claims that the trial court erred in re-opening the issue of suppression, based upon Sodomsky's claim of an intervening change of law. *Id.* at 13-14. The Commonwealth contends that the **Jones** decision is not an *intervening* change of law, as the Pennsylvania Superior Court was aware of the **Jones** decision during the second appeal. *Id.* at 14. The Commonwealth points out that Sodomsky's counsel addressed the applicability of **Jones** during oral argument before the Pennsylvania Superior Court panel, and in his Petition for allowance of appeal to the Pennsylvania Supreme Court. *Id.*

Our careful review of the record discloses that prior to the hearing and Order underlying the instant appeal, the suppression court had no opportunity to discuss or apply the United States Supreme Court's decision in **Jones**. During the second appeal, this Court focused upon whether the suppression court had erred or abused its discretion when it ruled that Sodomsky had a reasonable expectation of privacy in his computer data. Because the applicability of **Jones** (an intervening change of law) previously has not been addressed by this Court, we are not barred from addressing the issue during the instant appeal. **See Commonwealth v. Starr**, 664 A.2d 1326, 1332 (Pa. 1995) (stating that the law of the case doctrine does not apply where there exists an intervening change in the applicable law). Accordingly, the Commonwealth is not entitled to relief on this claim.

In its second claim, the Commonwealth argues that Sodomsky failed to identify any intervening change in the law that applies to his suppression claim. Brief for Appellant at 15. The Commonwealth contends that **Jones** only reiterated that "a traditional property law analysis still existed …." **Id.** The Commonwealth asserts that "any property right [Sodomsky] might have had in his computer, … he relinquished to Circuit City for the limited purpose of doing whatever the technicians need to do to make the DVD burner work correctly." **Id.** at 17.

Similarly, in its third claim, the Commonwealth argues that **Jones** does not apply where, as here, the defendant gave up his property rights. **Id.** at 18. The Commonwealth also contends that the "plain view exception applied to the police view of 19 seconds of the video Circuit City employees observed." **Id.** at 19. The Commonwealth argues that, based upon the evidence, Sodomsky relinquished his property rights and any expectation of privacy in the video clip used by Mr. Richert to test the DVD burner. **Id.**

"The appellate standard of review of suppression rulings is well-settled. This Court is bound by those of the suppression court's factual findings which find support in the record, but we are not bound by the court's conclusions of law." **Commonwealth v. Millner**, 888 A.2d 680, 685 (Pa. 2005); **see also Commonwealth v. Booze**, 953 A.2d 1263, 1269 (Pa. Super. 2008) (stating that "[w]here the record supports findings of the

suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.") (citation omitted).

Here, the suppression court granted Sodomsky's suppression Motion, explaining that

> [t]he ***Katz***[6] test of reasonable expectation of privacy is never reached, just as it was never reached in ***Jones***. This court is again constrained, this time under the ***Jones*** holding, to suppress the evidence that was obtained by the unauthorized trespass by the government….

Suppression Court Opinion, 4/25/14, at 4 (footnote omitted, footnote added).[7] The suppression court concluded that the search of Sodomsky's computer files, and the seizure of his computer, violated the Fourth Amendment to the United States Constitution. ***Id.*** at 3-4. Upon careful review, we are constrained to agree.

The Fourth Amendment provides "[t]he right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV.[8] A warrantless search is *per se* unreasonable under the Fourth Amendment. ***Katz***, 389 U.S. at 357.

---

[6] ***See Katz v. United States***, 389 U.S. 347, 361 (1967).

[7] The Commonwealth has not challenged Sodomsky's ownership of the desktop computer, or that Sodomsky was told to retrieve his computer one hour after leaving it at Circuit City.

[8] This right is enforceable against the states as part of the due process guarantee of the Fourteenth Amendment. ***Mapp v. Ohio***, 367 U.S. 643, 655 (1961). Evidence obtained in violation of the constitutional protections must be excluded. ***Id.***

The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections:  When "the Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment has "undoubtedly occurred."  [] *Jones*, 565 U.S. [] ___, 132 S. Ct. 945, [951 n.3,] 181 L. Ed. 2d 911, 919 [n.3] (2012).  By reason of [the United States Supreme Court's] decision in *Katz*[,] …  property rights "are not the sole measure of Fourth Amendment violations," *Soldal v. Cook County*, 506 U.S. 56, 64, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992)[,] but though *Katz* may add to the baseline, it does not subtract anything from the Amendment's protections "when the Government *does* engage in [a] physical intrusion of a constitutionally protected area[.]" *United States v. Knotts*, 460 U.S. 276, 286, 103 S. Ct. 1081, 75 L. Ed. 2d 55 (1983) (Brennan, J., concurring in the judgment).

*Florida v. Jardines*, ___ U.S. ___, ___, 133 S. Ct. 1409, 1414 (2013) (emphasis in original).

The United States Supreme Court has long held that the Fourth Amendment protects possessory and liberty interests, even when privacy rights are not implicated.  *Soldal*, 506 U.S. at 63-64.  While *Katz* and its progeny shifted the emphasis in Fourth Amendment law from property to privacy, "[t]here was no suggestion that this shift in emphasis had snuffed out the previously recognized protection for property under the Fourth Amendment." *Id.* at 64.

In *Jones*, the United States Supreme Court addressed whether police officers had engaged in a "search," within the meaning of the Fourth Amendment, when they installed and monitored a Global Positioning System tracking device on a suspect's car.  *Jones*, 565 U.S. at ___, 132 S. Ct. at

946. In addressing this issue, the Supreme Court explained that "Fourth Amendment rights do not rise or fall with the *Katz* formulation." *Jones*, 565 U.S. at ___, 132 S. Ct. at 950. Rather, the Supreme Court expressed "a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') [the Fourth Amendment] enumerates." *Id.* In rediscovering the trespassory origins of the Fourth Amendment, the *Jones* majority observed that the more recently adopted "reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test." *Id.*, 565 U.S. at ___, 132 S. Ct. at 952. Applying an "exclusively property-based approach," the Supreme Court held that a search occurred when the government "physically occupied private property for the purpose of obtaining information," which "would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Id.*, 565 U.S. at ___, 132 S. Ct. at 949-50 (citation omitted).

In *Jardines*, the Supreme Court again applied a property-based analysis of Fourth Amendment protections. The Supreme Court ruled that a warrantless search of the curtilage of a house by a drug-sniffing dog violated the Fourth Amendment, regardless of whether "the officers' investigation of [the defendant's] home violated his expectation of privacy under *Katz*." *Jardines*, 133 S. Ct. at 1417.

Applying this same property-based analysis, in *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473 (2014), the United States Supreme Court

held that police may not, without a warrant, search digital information on a cell phone seized incident to an arrest. *Id.* at 2480, 2495. In holding that an unconstitutional search of the defendant's papers and effects had occurred, the Supreme Court emphasized the quantity and quality of information stored on a cell phone:

> Although the data stored on a cell phone is distinguished from physical records by quantity alone, certain types of data are also qualitatively different. An Internet search and browsing history, for example, can be found on an Internet-enabled phone and could reveal an individual's private interests or concerns— perhaps a search for certain symptoms of disease, coupled with frequent visits to WebMD. Data on a cell phone can also reveal where a person has been. Historic location information is a standard feature on many smart phones and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building….
>
> Mobile application software on a cell phone, or "apps," offer a range of tools for managing detailed information about all aspects of a person's life. There are apps for Democratic Party news and Republican Party news; apps for alcohol, drug, and gambling addictions; apps for sharing prayer requests; apps for tracking pregnancy symptoms; apps for planning your budget; apps for every conceivable hobby or pastime; apps for improving your romantic life. There are popular apps for buying or selling just about anything, and the records of such transactions may be accessible on the phone indefinitely. There are over a million apps available in each of the two major app stores; the phrase "there's an app for that" is now part of the popular lexicon. The average smart phone user has installed 33 apps, which together can form a revealing montage of the user's life.

*Id.* 134 S. Ct. at 2490 (citations omitted). Ultimately, the Supreme Court extended Fourth Amendment protections to the digital data stored on a cell phone:

> Our holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest. Our cases have historically recognized that the warrant requirement is "an important working part of our machinery of government," not merely "an inconvenience to be somehow 'weighed' against the claims of police efficiency." *Coolidge v. New Hampshire*, 403 U.S. 443, 481, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). Recent technological advances similar to those discussed here have, in addition, made the process of obtaining a warrant itself more efficient. *See* [*Missouri v.*] *McNeely*, 569 U.S., at ___, 133 S. Ct. 1552[,] 1573, 185 L. Ed. 2d 696, 720 ); *id.*, at ___ (Roberts, C. J., concurring in part and dissenting in part) (133 S. Ct. 1552; 1573, 185 L. Ed. 2d 696, 720) (describing jurisdiction where "police officers can e-mail warrant requests to judges' iPads [and] judges have signed such warrants and e-mailed them back to officers in less than 15 minutes").

*Riley*, 134 S. Ct. at 2493.

Here, the same quality and quantity of information found on a cell phone also is digitally stored on a desktop computer.[9] For the same reasons that the *Riley* Court considered it necessary to protect the digital data stored on a cell phone, such protections naturally extend to the digital data stored on a desktop computer. Applying the property-based Fourth Amendment analysis explained in *Jones*, and relied upon in *Riley*, we conclude that the digital data stored on Sodomsky's desktop computer is subject to Fourth Amendment protections, regardless of his reasonable expectation of privacy. Under this rubric, we review the search of Sodomsky's computer.

---

[9] Similar to cell phones, desktop computers now have "apps," store financial records, and even may store a back-up of the data from a cell phone.

"[A] search warrant is required before police may conduct any search." ***Commonwealth v. Williams***, 73 A.3d 609, 614 (Pa. Super. 2013) (citation omitted). "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." ***Id.*** One of these exceptions is the "plain view" doctrine, upon which the Commonwealth relies.

The plain view doctrine permits the warrantless search and seizure of an object when "(1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and [] (3) the officer has a lawful right of access to the object." ***Commonwealth v. Whitlock***, 69 A.3d 635, 637 (Pa. Super. 2013). In determining whether the incriminating nature of an object is "immediately apparent" to a police officer, courts should evaluate the "totality of the circumstances." ***Id.*** "Although courts have recognized that a police officer can never be certain that an object in plain view is incriminating, the officer's belief must be supported by probable cause." ***Id.***

The parties here do not dispute that the police were lawfully present in the Circuit City store and that Sodomsky's computer was in plain view. However, the record does not support a finding that the digital data forming the basis of the charges against Sodomsky was in plain view, or that the incriminating nature of Sodomsky's computer was immediately apparent.

Our review of the record discloses that police officers were called to the Circuit City store after Mr. Richert, a Circuit City employee, conducted a search of video files on Sodomsky's computer. N.T., 9/28/05, at 23-24, 26. Upon arriving at the scene, Wyomissing Police Officer John Phillips ("Officer Phillips") asked Mr. Richert to describe what he had seen on Sodomsky's computer. *Id.* at 42. Upon the express direction of Officer Phillips, Mr. Richert double-clicked on the file to open it, and then played the video file for the officer. *Id.* at 38. The file was not visible on Sodomsky's computer until Officer Phillips directed Mr. Richert to open the video data file. *Id.* at 38, 42.

Thus, the evidence, viewed in a light most favorable to Sodomsky, established that the suspect video file was not in "plain view" when Officer Phillips arrived at the scene, nor was its criminal nature readily apparent. The incriminating nature of the video became apparent only after Officer Phillips directed Mr. Richert to open and play the digital data file. By directing Mr. Richert to open and play the computer digital data file, Officer Phillips effectuated a warrantless search of the digital data stored on Sodomsky's desktop computer.

Under *Jones* and *Riley*, the warrantless search of Sodomsky's digital data files, stored on his desktop computer, violated Sodomsky's Fourth Amendment protections. Consequently, the officers' subsequent seizure of the computer, and additional searches conducted thereafter, were unlawful

as "fruits of the poisonous tree." ***See Wong Sun v. United States***, 371 U.S. 471, 484-85 (1963) (recognizing that evidence discovered as a result of a search in violation of the Fourth Amendment must be excluded from evidence).

Based upon the foregoing, we are constrained to affirm the Order of the suppression court.

Order affirmed.

Panella, J., joins the opinion.

Ott, J., files a dissenting opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/5/2015</u>