J-E01008-16

2016 PA Super 84

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| KENNETH F. SODOMSKY | |
| | No. 870 MDA 2014 |

Appeal from the Order April 25, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0001025-2005

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, J., SHOGAN, J.,
LAZARUS, J., MUNDY, J., OLSON, J., OTT, J., and STABILE, J.

OPINION BY OTT, J.:                                    **FILED APRIL 12, 2016**

The Commonwealth appeals the order[1] entered April 25, 2014, in the

Berks County Court of Common Pleas, granting the petition of Kenneth F.

Sodomsky to re-open his suppression hearing for the second time, and

suppressing evidence recovered from his computer. On appeal, the

Commonwealth argues the trial court erred in (1) re-opening the hearing

after two prior suppression orders were reversed by this Court on appeal,

and (2) suppressing the evidence recovered from Sodomsky's computer.

Because we find the trial court abused its discretion in re-opening the

_____

[1] The Commonwealth properly certified, in its notice of appeal, that "the ruling terminated or substantially handicaps the prosecution of this case," a prerequisite to this Court's jurisdiction pursuant to Pa.R.A.P. 311(d). Notice of Appeal, 5/22/2014.

suppression hearing, we reverse the order of the trial court and remand for further proceedings.

The facts underlying Sodomsky's suppression issue were summarized by this Court in a prior opinion as follows:

> Richard Kasting was the senior sales assistant in the technology department of the Circuit City Store located on Woodland Road, Wyomissing, Berks County. Mr. Kasting testified that on October 15, 2004, [] Kenneth Sodomsky, came to Circuit City and asked Mr. Kasting to install an optical drive and DVD burner into his computer. The work order that [Sodomsky] executed that day authorized Circuit City to install and configure the optical drive unit and DVD in his desktop computer.
>
> In accordance with store practice, Mr. Kasting summarized to [Sodomsky] "what is done during the installation." [Sodomsky] was informed that as part of the installation process, the installer would "have to make sure [the DVD burner] works." There is no indication that [Sodomsky] asked how the DVD burner would be tested or in any manner restricted what procedure could be utilized to confirm the burner's operability. [Sodomsky] requested that the work be performed on an expedited basis, and Mr. Kasting instructed him to return in approximately one hour.
>
> Toby Werner was in the middle of the installation process when Stephen Richert, the head of personal computer repairs at that Circuit City, arrived. Mr. Richert testified that the DVD drive was installed when he arrived in the department, but the software had not yet been installed. Mr. Richert explained that all DVD burners and players were accompanied by software.[2] Mr. Richert testified specifically that at Circuit City, with "every installation" of the hardware, "any supplementary software" was installed both as a courtesy "and to make sure when it leaves the store, we can guarantee that it is working."

_____

> [2] [Sodomsky] maintains that he did not request installation of the DVD software. However, it is clear that Circuit City could not test the hardware without installing the software and always installed any software accompanying a

hardware installation. [Sodomsky] was told that the hardware would be tested.

_____

After the software was installed, Mr. Richert performed a general search for a video to test the new DVD drive. More specifically, he testified as follows:

Well, after we installed the software, we did a generic search of the [personal computer (PC)] where you click on the start menu, you click on search, and this being the [W]indows XP, a search box comes up and it is custom made to this operating system. In this case, this system, it's about half way down the screen on the left-hand side there's a search, and you can enter—in this case, you could enter a specific name of a file that you're looking for and find it.

We weren't looking for anything specific, so we did a generic search. Below the field where you could enter the name of a file that you are looking for, you can click on the generic boxes listed, picture, movie or if you click it, it does a general search of the whole PC and finds any of that type of objects that you're looking for. In this case, we clicked movies or video, and it brings up all the different formats of videos.

There are many different types of video formats. There's M-peg, MPG–4, AVI, Quick Time. Any types of those files, if used to place on Windows Media Player, which is a program that's inherent to PC when running [W]indows XP or to the DVD software, in certain circumstances, if you install the software and it wasn't installed properly or you didn't receive notification and you try to play the files or play a DVD movie on the PC, you get distortion that isn't necessarily seen right away when you install it.

So, in this case, we wanted to make sure that all types of files were working fine so that you wouldn't get any type of errors. When you install the different type of software, there's something called code X. It's a little piece of software inside the PC that helps the PC better understand and translate video signals through different players.

So, in this case, if we play a movie file and we get distorted colors or blurring of the image or a ghosting effect where all color is inverted, we know there is a problem with the installation and we have to find it and fix it. If there is a software update, we have to uninstall and reinstall it, if there was an issue.

Mr. Richert testified that once the search button was activated for a given object, the computer automatically loaded the requested files onto the screen, which continued to enlarge by itself. Thus, after the search was initiated, Mr. Richert did not manipulate the computer further to see the entire list of videos The first few video titles that appeared from [Sodomsky's] video list were innocuous. However, as the video log continued to compile on the computer screen, which occurred without any human intervention, some of the files appeared to be pornographic in nature due to their titles which included masculine first names, ages of either thirteen or fourteen, and sexual acts. Mr. Richert clicked on "the first one" that appeared questionable, and the video contained the lower torso of an unclothed male, and when a hand approached the male's penis, Mr. Richert immediately stopped the video. Mr. Richert contacted his manager and then telephoned the Wyomissing police.

During cross-examination, Mr. Richert admitted that he had been told by a Pennsylvania State Police Officer to contact police if he ever ran across what appeared to be child pornography while at work. At the time, Mr. Richert was taking a course at a local college and hoped to enter the law enforcement field.

Wyomissing Police Detective George Bell and two other police officers responded to the call and viewed the same video clip. When [Sodomsky] arrived to retrieve his computer, Detective Bell informed him that his computer was being seized because police suspected that it contained child pornography. [Sodomsky] responded that he knew what they had found and that his "life was over." Police took the computer to the police station, obtained a warrant to search it, and discovered child pornography.

**_Commonwealth v. Sodomsky_**, 939 A.2d 363, 364-366 (Pa. Super. 2007).

- 4 -

Sodomsky was subsequently charged with two counts of sexual abuse of children (child pornography), and one count of obscene and other sexual materials and performances.[2] On May 13, 2005, he filed a pre-trial motion to suppress the evidence recovered from his computer, asserting the warrantless search and seizure of the computer violated his Fourth Amendment rights. **See** Omnibus Pre-Trial Motion, 5/13/2005, at ¶ 13. The trial court conducted a suppression hearing and, on November 9, 2005, entered an order granting Sodomsky's suppression motion. Specifically, the court found that although the police officers' viewing of the video file on Sodomsky's computer was a "reasonable search, not in violation of [Sodomsky's] rights of privacy[,]" the officers' subsequent seizure of the computer without a warrant was "unreasonable." Findings of Fact and Conclusions of Law, 11/10/2005, at 4, 7. The Commonwealth filed an appeal to this Court.

In a published opinion, a panel of this Court reversed, concluding Sodomsky "did not retain a privacy interest in his videos" stored on his computer. **Sodomsky**, **supra**, 939 A.2d at 369. The panel opined: "Since [Sodomsky] abandoned his privacy interest in the videos contained in the computer, he cannot object to the subsequent viewing of the video list and

_____

[2] **See** 18 Pa.C.S. §§ 6312(d)(1) and 5903(a)(3), respectively.

file by police."[3]  *Id.*  Sodomsky's petitions seeking to appeal the decision to both the Pennsylvania Supreme Court and the United States Supreme Court were subsequently denied.  *See Commonwealth v. Sodomsky*, 962 A.2d 1196 (Pa. 2008), *cert. denied*, 556 U.S. 1282 (2009).

Upon remand to the trial court, Sodomsky filed a petition seeking to introduce new evidence on the motion to suppress.  In an accompanying memorandum of law, Sodomsky asserted he intended to present expert testimony that the procedure used by the Circuit City employee to test the hard drive installation was improper and, therefore, "the decision that Mr. Sodomsky abandoned his expectation of privacy in the contents of his computer was based on facts that are demonstrably false."  Memorandum of Law in Support of Petition to Introduce New Evidence at Motion to Suppress, 3/12/2010, at 6.  The trial court conducted a two-day suppression hearing, and, on March 18, 2011, entered an order, once again, granting Sodomsky's motion to suppress.  *See* Order, 3/18/2011.  The trial court determined the Circuit City employee did not act in a "commercially-acceptable" manner when he opened the video file on Sodomsky's computer to test the DVD burner.  Trial Court Opinion, 6/2/2011, at 8.  Therefore, the court concluded

---

[3] The panel also rejected Sodomsky's contention that the seizure of the computer was improper "because it was accomplished without a warrant." *Sodomsky*, *supra*, 939 A.2d at 370.  Rather, the panel agreed with the Commonwealth's claim that "the plain view exception to the warrant requirement applied herein."  *Id.*

Sodomsky retained a "constitutionally protected privacy interest in the contents of his computer, so any examination of the videos by the police would have been subject to a warrant requirement." *Id.* at 9.

The Commonwealth filed another appeal to this Court. In an unpublished decision, a panel of this Court, once again, reversed the decision of the trial court. *See Commonwealth v. Sodomsky*, 47 A.3d 1257 [657 MDA 2011] (Pa. Super. 2012) (unpublished memorandum). The panel found that "none of the evidence presented at the second suppression hearing [altered its] previous conclusion that [Sodomsky] relinquished control of the video files on his computer when he took [it] to Circuit City to install a DVD burner and thereby abandoned his privacy interest in the files."[4] *Id.*, unpublished memorandum at 13. Accordingly, for the second time, the panel reversed the trial court's order and remanded the case for further proceedings. Sodomsky again sought relief with both the Pennsylvania and United States Supreme Courts, but his requests for review were denied. *See Commonwealth v. Sodomsky*, 63 A.3d 1246 (Pa. 2013), *cert. denied*, 134 S.Ct. 212 (U.S. 2013).

Subsequently, on December 16, 2013, after the case was remanded to the trial court, Sodomsky filed a petition seeking to re-open the suppression

---

[4] The panel also noted the Commonwealth waived its contention that Sodomsky failed to present new evidence warranting the court's reconsideration of the suppression issue because it did not respond to the trial court's rule to show cause. *See id.*, unpublished memorandum at 8-9.

hearing for a second time, now claiming there was an intervening change in the law, namely, the January 23, 2012, decision of the United States Supreme Court in **United States v. Jones**, 132 S.Ct. 945 (U.S. 2012). Sodomsky asserted that because **Jones** was decided after the briefs were filed in the prior appeal, and its holding "absolutely would affect the outcome of the motion," it was "necessary to re[-]open the suppression proceedings for consideration of the impact of **Jones** on the suppression claim." Petition to Re-Open Suppression Hearing Based on Intervening Change in Law, 12/16/2013, at 5-66. Sodomsky also argued the suppression record should be opened "in the interests of justice[.]" **Id.** at 5.

The trial court convened yet another suppression hearing on January 31, 2014.[5] Thereafter, on April 25, 2014, the trial court entered an order granting Sodomsky's motion to suppress for the third time. This timely Commonwealth appeal followed.[6]

A divided panel of this Court affirmed the trial court's suppression order. However, the Commonwealth sought *en banc* review, which this Court granted. The matter is now ready for our review.

_____

[5] No witnesses were presented at this hearing. Rather, the court considered the arguments of counsel. **See generally** N.T., 1/31/2014.

[6] On May 30, 2014, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied with the court's directive, and filed a concise statement on June 17, 2014.

The Commonwealth first challenges the trial court's decision to re-open the suppression hearing for a second time.[7] Specifically, it argues the ***Jones*** decision did not constitute new law because (1) it was decided before this Court issued its memorandum decision in 2012, and (2) the holding in ***Jones*** simply "reminded the legal community that a traditional property analysis still existed" for purposes of a Fourth Amendment challenge. Commonwealth's Brief at 14, 17. We find the Commonwealth's second argument dispositive in this appeal.

Preliminarily, we note that when reviewing a Commonwealth appeal from an order granting the suppression of evidence,

> we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Carter***, 105 A.3d 765, 768 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal denied*, 117 A.3d 295 (Pa. 2015).

Pennsylvania Rule of Criminal Procedure 581 "is designed to provide one single procedure for the suppression of evidence alleged to have been

---

[7] We have consolidated the Commonwealth's first two questions for ease of disposition.

obtained in violation of the defendant's rights." Pa.R.Crim.P. 581, Comment.

The Rule provides, in relevant part:

> (B) **Unless the opportunity did not previously exist, or the interests of justice otherwise require**, such motion shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 578. If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.

Pa. R. Crim. P. 581 (emphasis supplied).[8] "Whether 'the opportunity did not previously exist, or the interests of justice otherwise require . . .' is a matter for the discretion of the trial judge." *Commonwealth v. Williams*, 323 A.2d 862, 864 (Pa. Super. 1974) (citation omitted).

As outlined above, in December of 2013, after a panel of this Court reversed the trial court's second order suppressing the evidence recovered from Sodomsky's computer, and both the Pennsylvania Supreme Court and the United States Supreme Court declined to accept his appeal for the second time, Sodomsky petitioned the trial court to re-open his suppression

---

[8] We note Subsection (J) of the Rule states that when the trial court determines evidence should **not** be suppressed, "such determination shall be final, conclusive, and binding at trial, except upon a showing of evidence which was theretofore unavailable[.]" Pa.R.Crim.P. 581(J). However, the Rule does not specifically provide for the situation in the present case, that is, where a trial court has, twice, ordered suppression of evidence, but both orders have been reversed by this Court on appeal. Accordingly, we extrapolate that upon remand, following a reversal of a suppression order on appeal, a trial court may re-open a suppression hearing only under the limited circumstances set forth in subsection (B), *i.e.*, when the opportunity to present the issue did not previously exist or the interests of justice otherwise require.

hearing once again. He asserted the United States Supreme Court's decision in ***Jones***, ***supra***, constituted a "clear change of law[.]" Petition to Re-Open Suppression Hearing Based on Intervening Change in Law, 12/16/2013, at 4, 5. Upon hearing argument on this issue, the trial court agreed, concluding:

> ***Jones*** may not be entirely new law, but it reaffirmed that the government's physical intrusion on [Sodomsky's] "effect" for the purpose of obtaining information constitutes a "search" and that this type of encroachment on an area enumerated in the Fourth Amendment would have been considered a search within the meaning of the Amendment at the time it was adopted. [***Jones***] is new law in the sense that the expectation of privacy standard is no longer the exclusive test to determine if a search violates the Fourth Amendment. Thus, this approach is the equivalent to new law because it had not been applied since the expectation of privacy standard was enunciated in ***Katz v. United States***, 389 U.S. 347 (1967) and was not applied or addressed by the Superior Court in the case *sub judice*.

Trial Court Opinion, 7/29/2014, at 4.

Our review, however, leads to the conclusion that ***Jones*** did not create an intervening change in the law, which would justify the re-opening of Sodomsky's suppression hearing. Rather, we find the ***Jones*** Court, in determining the government's warrantless attachment of a GPS device to the defendant's vehicle and subsequent use of that device to monitor the vehicle's movement, constituted a search under the Fourth Amendment, reaffirmed the Fourth Amendment's continued long standing protection of a person's "effects." ***See*** U.S. Const. Amend. IV ("The right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ….") (emphasis supplied).

A summary of the facts in *Jones* is necessary to our analysis. In *Jones*, the FBI suspected the defendant was involved in drug trafficking. Based on its investigation, the FBI obtained a search warrant to attach a GPS tracking device to the defendant's car. The warrant authorized the installation of the GPS device for a 10-day period in the District of Columbia. However, on the 11th day, the FBI installed the GPS to the defendant's car while it was parked in a public lot in Maryland. For the next month, the FBI monitored the car's movements, which resulted in more than 2,000 pages of data. The defendant was ultimately charged with numerous drug offenses. *Jones*, *supra*, 132 S.Ct. at 947.

The defendant filed a motion to suppress the evidence obtained through the GPS tracking device. The court granted the motion in part, suppressing only the data obtained when the vehicle was parked in the defendant's own garage; "[i]t held the remaining data admissible, because '[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.'" *Id.* at 947. The defendant was ultimately convicted of all charges. The Court of Appeals for the District of Columbia reversed the conviction, finding the government's warrantless use of the GPS device violated the defendant's Fourth Amendment rights. The Supreme Court agreed, holding the government's "physical intrusion" upon the private

property of the defendant constituted a search within the meaning of the Fourth Amendment.[9] *Id.* at 949.

Preliminarily, we note the facts in *Jones* are not analogous to those presented in the case *sub judice*. As delineated above, in *Jones*, "[t]he Government physically occupied private property" by installing a GPS device on the defendant's vehicle for the explicit purpose of monitoring the vehicle's movements. *Jones*, *supra*, 132 S.Ct. at 949. Conversely, here, the police viewed Sodomsky's computer files, after Sodomsky left his computer at a Circuit City store for service (abandoning his privacy interests in the property for a limited time) and, during the course of that service visit, a

_____

[9] The *Jones* decision was authored by, now deceased, Justice Scalia, joined by Chief Justice Roberts, Justice Kennedy, Justice Thomas and Justice Sotomayor. Justice Sotomayor also authored a concurring opinion in which she expressed concern with the current state of the law regarding the reasonable expectation of privacy in our digital information society. However, she explained: "Resolution of these difficult questions in this case is unnecessary … because the Government's physical intrusion on Jones' Jeep supplies a narrower basis for decision." *Jones*, 132 S.Ct. at 957 (J. Sotomayor, concurring). With respect to the facts of the case before her, Justice Sotomayor noted "[t]he Government usurped Jones' property for the purpose of conducting surveillance on him, thereby invading privacy interests long afforded, and undoubtedly entitled to, Fourth Amendment protection." *Id.* at 954. Finally, Justice Alito, joined by Justices Ginsburg, Breyer and Kagan, concurred in the judgment. Justice Alito opined that the decision should be based upon whether the defendant's "reasonable expectations of privacy were violated by the long-term monitoring of the movements of the vehicle he drove." *Id.* at 958 (J. Alito, concurring in judgment). Therefore, five of the Justices still believed privacy interests were an essential consideration in a Fourth Amendment analysis.

clerk, a private citizen, happened upon the files in question. Although the police eventually seized Sodomsky's computer, it was only after they had viewed the identified pornographic video clip. *See Sodomsky*, *supra*, 939 A.2d at 370 (finding plain view exception to the warrant requirement excused police officer's warrantless seizure of Sodomsky's computer).

Furthermore, the *Jones* Court clearly stated it was not creating new law. Rather, the Supreme Court explained: "We have no doubt that such a physical intrusion[, as occurred here,] would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Jones*, *supra*, 132 S.Ct. at 949. Although the Court recognized that after its decision in *Katz*, *supra*, the focus of Fourth Amendment jurisprudence shifted to a defendant's reasonable expectation of privacy, it explained that *Katz* "did not narrow the Fourth Amendment's scope."[10] *Id.* at 951. Rather, the *Katz* decision expanded Fourth Amendment protections without

---

[10] In *Katz*, the Supreme Court held that the FBI's placement of an electronic listening device on a public telephone booth to eavesdrop on a suspect's conversations violated Fourth Amendment principles. *Katz*, *supra*, 389 U.S. at 348-349, 359. In doing so, the Court explained:

> [T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Id.* at 351-352 (internal citations omitted).

"withdraw[ing] any of the protection which the Amendment extends to the home."[11] *Id.*, *quoting* **Alderman v. United States**, 394 U.S. 165, 180 (1969).

As noted previously, Rule 581 permits a defendant to file a supplemental suppression motion when "the opportunity did not previously exist **or** the interests of justice otherwise require." Pa.R.Crim.P. 581(B) (emphasis supplied). Here, Sodomsky's sole basis for seeking to re-open the suppression hearing was the Supreme Court's decision in **Jones**. However, as we explained above, Sodomsky's opportunity to raise a property-based suppression claim **did** previously exist. Indeed, the **Jones** Court did not create new law, but rather reaffirmed that (1) property-based Fourth Amendment rights have always existed, and (2) the **Katz** decision, which focused exclusively on a defendant's reasonable expectation of privacy, "did not narrow the Fourth Amendment's scope."[12] **Jones**, **supra**,

---

[11] The **Jones** Court also relied upon the Supreme Court's prior decision in **Soldal v. Cook County**, 506 U.S. 56 (1992), in which the Court "unanimously **rejected** the argument that although a seizure had occurred in a technical sense when a trailer home was forcibly removed, no Fourth Amendment violation occurred because law enforcement had not invade[d] the [individuals'] privacy." **Jones**, **supra**, 132 S.Ct. at 951 (internal punctuation omitted and emphasis supplied), *citing* **Soldal**, **supra**. Therefore, the property-based Fourth Amendment argument that Sodomsky contends is "new law," has existed since, at least, 1992.

[12] Sodomsky claims that despite the language in **Jones**, "[t]he reality is that courts all over the country – both state and federal – read **Katz** … to mean that demonstrating a reasonable expectation of privacy is the only way by which one can bring into play one's Fourth Amendment protections." *(Footnote Continued Next Page)*

- 15 -

at 951. Moreover, under the same reasoning, the interests of justice did not require re-opening the suppression hearing based upon ***Jones***, because the decision did not present a change in the law.[13]

Therefore, because the ***Jones*** decision did not present an intervening change in the law, we conclude the trial court abused its discretion in re-opening Sodomsky's suppression hearing for the second time after its two

_____

*(Footnote Continued)*

Sodomsky's Brief at 24 n.6. ***See also*** Trial Court Opinion, 7/29/2014, at 4. However, neither Sodomsky nor the trial court acknowledge that the property-based right Sodomsky advocates was recognized more than 20 years ago by the Supreme Court in ***Soldal***. ***See Soldal***, *supra*, 506 U.S. at 65 ("We … are unconvinced that any of the Court's prior cases supports the view that the Fourth Amendment protects against unreasonable seizures of property only where privacy or liberty is also implicated.").

[13] We note that, traditionally, Pennsylvania courts have applied the "interests of justice" exception "to excuse a party's **tardy** presentation of a suppression motion." ***Commonwealth v. Johonoson***, 844 A.2d 556, 561 (2004) (emphasis supplied), *appeal denied*, 863 A.2d 1144 (Pa. 2004). ***See id.*** (finding no abuse of discretion on the part of the trial court in denying tardy supplemental suppression motion when defendant knew facts surrounding the stop at time he filed his first motion; in initial motion he argued his statement to trooper was not voluntary, but in supplemental motion he claimed entire encounter was an illegal investigative detention). ***But see Commonwealth v. Long***, 753 A.2d 272 (finding trial court did not abuse its discretion in considering defendant's untimely, oral, supplemental suppression motion presented at the close of the Commonwealth's case because motion challenged legitimacy of traffic stop based on videotape from inside police cruiser, and videotape was not shown to the defense until the first day of trial). Here, Sodomsky did not seek to file a "tardy" suppression motion because he uncovered new evidence, rather he sought to file a supplemental motion based upon an intervening change in the law. Because, as discussed *supra*, we conclude the ***Jones*** decision did not create "new law," we find the "interests of justice" also do not require re-opening his suppression hearing.

- 16 -

prior suppression orders were reversed by this Court on appeal. Indeed, Sodomsky is not entitled to "three bites" of the proverbial suppression apple. Because we agree the trial court should not have reconsidered Sodomsky's suppression argument, we need not address the Commonwealth's third issue on appeal.

Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/12/2016