**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHAD RANNELS, | : | |
| | : | |
| Appellant | : | No. 3106 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 12, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002281-2012

BEFORE: PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED OCTOBER 20, 2021**

Appellant Chad Rannels appeals from the judgment of sentence imposed following his jury conviction for first-degree murder, conspiracy to commit murder, and related offenses.[1] Appellant claims that the trial court erred in allowing a detective to interpret the records of a prison phone call at trial and in denying his motion to suppress evidence prior to his second trial. He also claims that the sentence of life without parole for conspiracy to commit murder is an illegal sentence. For the reasons that follow, we are constrained to vacate the judgment of sentence and remand for further proceedings consistent with this memorandum.

The trial court summarized the procedural history as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502, 903, 6106, 6108, and 907, respectively.

Appellant was arrested on September 23, 2011 and charged with murder, conspiracy to commit murder, firearms charges and possession of an instrument of crime. On June 4, 2013, following jury selection, Judge Lillian Ransom granted defense counsel's motion to suppress Appellant's statements to homicide detectives.[2] The Commonwealth filed an Interlocutory Appeal to the Superior Court and the jury was excused. On June 4, 2014, the Super[ior] Court affirmed the order granting the defense motion to suppress. [**Commonwealth v. Rannels**, 1568 EDA 2013, 2014 WL 10917038 (Pa. Super. filed June 4, 2014) (unpublished mem.), *appeal denied*, 106 A.3d 725 (Pa. 2015).] On August 28, 2014 petition for allowance of appeal to the Supreme Court of Pennsylvania was filed and on January 14, 2015 it was denied.

. . . The trial was scheduled for May 23, 2016. The case was assigned to Judge Diana Anhalt and on May 23, 2016 [the] defense requested a continuance to hire an expert witness[, and Appellant raised additional suppression claims.] On October 11, 2016 the jury returned with a Guilty verdict on one gun charge and was hung on all other charges. A mistrial was declared. On November 21, 2016 [Appellant's] counsel withdrew from the case and new counsel was appointed.

Retrial was scheduled for January 30, 2017. On January 30, 2017 the [second] trial was continued and rescheduled for September 11, 2017. New counsel [for Appellant] entered the case on June 5, 2017 [and filed additional motions to suppress]. Multiple defense requests for continuance resulted in the trial being scheduled for April 1, 2019. The case was reassigned to [Judge Gwendolyn Bright, who denied Appellant's motions to suppress].

---

[2] We add that before his first trial, Appellant initially filed motions to suppress in an omnibus pretrial motion on April 6, 2012. At that time, court appointed counsel represented Appellant. Appellant requested, in part, the suppression of his statements to police and the suppression of all physical evidence. Omnibus Pretrial Mot., 4/6/12, at 2-3 (unpaginated). Appellant retained private counsel who filed a suppression motion on May 29, 2013. The May 29, 2013 motion did not request the suppression of any physical evidence. **See** Mot. for Suppression, 5/29/13, at 2 (unpaginated). At the suppression hearing before Judge Ransom, Appellant's counsel only argued in favor of suppressing Appellant's statement based on a violation of **Miranda v. Arizona**, 384 U.S. 436 (1966). **See** N.T., 6/4/13, at 4.

On April 12, 2019 the jury returned with a verdict of Guilty on all remaining charges . . . .

Trial Ct. Op., 10/28/20, at 1-2.

The trial court then summarized the evidence at Appellant's second trial as follows:

In the early morning hours of July 30, 2011 Kristin Shaquille Freeman [(decedent)] was shot and killed by Appellant around the 100 block of Garfield Street in Philadelphia. Shortly after midnight, the [decedent] was with his mother, Angela Hardy, at a Chinese store around the intersection of Germantown Avenue and Garfield Street. The [decedent] left the store to go to his car while his mother walked down the street to her mother's house. Hardy was speaking to neighbors outside her mother's house and heard gunshots. Someone told her that her son's car was shot up on Garfield Street and she ran towards the shooting. Hardy identified her son's car at the scene of the shooting. [The decedent] was pronounced dead at 1:08 a.m. on July 31, 2011 at Albert Einstein Medical Center, cause of death was multiple gunshot wounds.

A car located near the [decedent]'s vehicle was searched and a rental agreement as well as tickets to Six Flags Great Adventure were recovered. John Fisher's name was listed as the operator of the car on the rental agreement. Fisher testified that his boss rented the car and bought the ticket to Six Flags as a gift to her employees for good performance. A few days later, on July 29, 2011, Fisher rented the car to Appellant to earn money to buy drugs. Fisher knew Appellant as a drug dealer he had purchased drugs from previously. Police located Appellant through cell phone records following an interview with Fisher. Appellant's fingerprints were identified inside the car and on a gun found at the crime scene. The fingerprints of various other individuals were also found in the car.

*Id.* at 3 (record citations and footnote omitted).

On April 12, 2019, the trial court sentenced Appellant to life imprisonment without the possibility of parole for first-degree murder and

- 3 -

conspiracy to commit murder. The trial court imposed no further penalties for the remaining offenses.

Appellant timely filed a counseled post-sentence motion on April 22, 2019. On May 2, 2019, the trial court thereafter granted Appellant leave to proceed *pro se* following a ***Grazier***[3] hearing and permitted Appellant to file a supplemental post-sentence motion *pro se*. On May 21, 2019, the trial court ordered a continuance to accommodate Appellant's need "for video and notes of testimony" and to "provide an affidavit verifying his investigator[,]" Order, 5/21/19. In the same order, the trial court stated that Appellant could file a supplemental post-sentence motion by July 22, 2019. Appellant filed his *pro se* supplemental post-sentence motion on July 17, 2019. On October 3, 2019, the trial court denied Appellant's post-sentence motion and appointed appellate counsel to represent Appellant for appeal.

Appellant, through counsel, filed a notice of appeal on Monday, November 4, 2019.[4] This Court then granted appointed appellate counsel's motion to withdraw and remanded the matter to the trial court for the appointment of substitute counsel. The trial court thereafter appointed present counsel to represent Appellant and directed counsel to file and serve a Pa.R.A.P. 1925(b) statement. Counsel timely complied and challenged the

---

[3] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[4] The thirtieth day following the entry of the October 3, 2019 order denying Appellant's post sentence motion was Saturday, November 2, 2019. Therefore, the notice of appeal filed on Monday, November 4, 2019, was timely filed. ***See*** 1 Pa.C.S. § 1908.

- 4 -

trial court's rulings to (1) deny Appellant's suppression motions before his second trial, (2) permit a detective to interpret Appellant's prison phone calls, and (3) impose a sentence of life imprisonment without parole for conspiracy. The trial court filed an opinion and concluded that Appellant's first two issues lacked merit but requested that this Court amend an illegal sentence for conspiracy. Trial Ct. Op. at 4-6.

Appellant presents three issues, which we have reordered as follows:

1. Did the trial court err and cause irreparable harm to Appellant by intruding upon the province of the jury and allowing Detective John Verrecchio to engage in extensive interpretation of the evidence that was prejudicial to Appellant?

2. Did the trial court err in not suppressing DNA, fingerprint, phone records, and other physical evidence which was only obtained based upon an illegally-obtained oral statement by Appellant that was suppressed and there was no basis for stating that the physical evidence would have been inevitably discovered absent the unconstitutional obtaining of Appellant's statement by police?

3. Did the trial court err in imposing an illegal sentence of mandatory life for conspiracy to commit murder in the first-degree?

Appellant's Brief at 4 (formatting altered).

**Detective John Verrecchio's Testimony**

In his first issue, Appellant claims that the trial court abused its discretion when it overruled his objection and permitted Detective Verrecchio to interpret prison phone calls he made regarding John Fisher, who testified at trial against him. Appellant argues that during direct and redirect examination by the Commonwealth, the detective (1) attempted to link

Appellant to the murder of Kevin Drinks while trying to coordinate the murder of Fisher, the latter who testified against Appellant, (2) concluded that Appellant was trying to set up Fisher's murder, and (3) concluded that Appellant was asking whether Fisher was killed at his behest.[5] *Id.* at 16-17. Appellant claims that the detective's testimony invaded the province of the jury and caused "irreparable harm" because it implicated him in the killing of another individual. *Id.* at 17.

The Commonwealth responds that Detective Verrecchio's testimony did not invade the province of the jury. The Commonwealth notes that the

_____

[5] Appellant cites to several portions of the trial transcript. First, before playing the phone calls, the Commonwealth asked whether Detective Verrecchio discovered "information that the homicide of [the decedent] and the homicide of Kevin Drinks may be connected," the detective responded "yes." *See* N.T., 4/9/19, at 9. Second, Appellant refers to a portion of the transcript in which the Commonwealth played a part of a phone call and asked the detective, "[D]id you notice anything about that call that was particularly important or relevant in your investigation[?]" *See id.* at 26. Over Appellant's objection, the detective responded that Fisher lived at a certain address and when the detective "made the comparison to his interview with his address and his location, that was important to me." *Id.* This portion of the trial transcript also included the detective's testimony defining "smoke street" as an area frequented by people addicted to crack cocaine, "preliminary" meaning a preliminary hearing, and "ME" as "medical examiner," and the detective's identification of individuals on or referred to in the calls by, name, nickname, and phone number. *Id.* at 24-41.

Third, Appellant refers to a portion of the trial transcript in which the Commonwealth, on redirect examination, read parts of the calls to Detective Verrecchio and asked whether the detective misunderstood or misheard the statements on the recording. One of these exchanges included the Commonwealth asking, "Additionally, there was no misinterpretation of 'He wants to know about the motherfucking old head and the motherfucking car,' correct?" to which the detective replied, "Correct." *Id.* at 56.

detective's testimony was limited to answering the Commonwealth's questions regarding the background and facts of the case. Commonwealth's Brief at 15-16. The Commonwealth further contends that the detective's answers to questions on redirect examination responded to cross-examination that challenged whether the detective misheard or misunderstood the recordings. *Id.* The Commonwealth notes that the trial court instructed the jury that they were the sole judges of the facts, that the jury heard the audio of the call, and that the trial court instructed the jury that the audio itself was the actual evidence. *Id.* at 16. According to the Commonwealth, this instruction cured any error or prejudice resulting from the detective's testimony. *Id.*

The trial court concluded that Appellant's claim lacked merit because the evidence of Appellant's prison calls and Detective Verrecchio's testimony was admissible as evidence of Appellant's consciousness of guilt. Trial Ct. Op. at 5. The trial court further notes the detective's passing references to the meaning of terms such as "street smoke," "ME," and "PARS report" and concludes that it properly instructed the jury on how to consider the detective's testimony. *Id.*

"Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." *Commonwealth v. Trinidad*, 96 A.3d 1031, 1036 (Pa. Super. 2014) (citation and internal quotation marks omitted). Moreover, "[e]ven if witness testimony causes prejudice, adequate instructions may be

able to cure the error."[6]  ***Commonwealth v. Ramos***, 231 A.3d 955, 958 (Pa. Super. 2020).

Instantly, the record establishes while the prison phone calls were being played for the jury, the prosecutor asked Detective Verrecchio several questions concerning what was being said on the recordings.  ***See*** N.T., 4/9/19, at 22-42.  The Commonwealth did not ask, nor did the detective opine on the meaning of the tapes as a whole.  Instead, the exchanges between the Commonwealth and the detective concerned factual information, which the detective developed during the investigation and provided context to the phone calls.  ***See id.*** at 26-41.  These exchanges did not call for impermissible opinions from the detective.  Accordingly, Appellant's claims that the Commonwealth introduced improper opinion evidence concerning the prison phone calls fail.  ***See Commonwealth v. Rose***, 172 A.3d 1121, 1128-31 (Pa. Super. 2017) (discussing the admissibility opinion versus lay testimony

---

[6] We add that our Supreme Court has stated:

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. J. Fitzpatrick***, 255 A.3d 452, 483 (Pa. 2021) (citations omitted).

concerning interpretation of "street language" in a defendant's prison phone call).

Even if some of the Commonwealth's exchanges with Detective Verrecchio could be considered impermissible opinion or interpretation evidence, it was limited to preliminary or background information concerning the Commonwealth's consciousness of guilt evidence. **See** N.T., 4/9/19, at 9 (indicating that the Commonwealth asked whether Detective Verrecchio's investigation revealed information that murders of decedent and Kevin Drinks "may be connected"). Further, although the detective interpreted terms such as "smoke street," "preliminary," or "ME," that testimony was passing, **id.** at 24, 41, and the trial court explained to the jury that "the actual evidence is the audio" and that the audio "was the actual evidence [the jury was] to listen carefully." **Id.** at 21. Upon review, we conclude that any improper opinion or interpretation evidence was *de minimis*. **See Rose**, 172 A.3d at 1131. Additionally, any error in the admission of improper opinion or interpretation evidence was, beyond a reasonable doubt, harmless in comparison to the properly admitted evidence. **Id.**

Therefore, Appellant's claim based on Detective Verrecchio's testimony merits no relief.

### Suppression Claim

Appellant next claims that the trial court erred in denying his suppression motions that he filed before his second trial. **Id.** at 10-13.

By way of further background, this Court, when affirming Judge Ransom's suppression ruling, summarized the facts underlying the investigation into Appellant as follows:

Philadelphia Police Detective Gregory Santamala [(Detective Santamala)], Homicide Division, began investigating [the July 30, 2011 shooting of the decedent] and questioned John Fisher . . . , regarding a Silver GMC Yukon SUV . . . found at the scene.

On August 1, 2011, Fisher was interviewed by Det[ective] Santamala and his partner. Fisher stated that he was in possession of the Yukon on Wednesday, July 27, 2011, after his boss, Theresa Cipriano, rented two Yukons so the employees could go to Six Flags Great Adventure Amusement Park (Six Flags). In his statement, Fisher said that he and a co-worker drove the other employees to Six Flags and returned to Philadelphia that same day. Fisher stated that he drank and smoked crack cocaine the evening of Wednesday, July 27, 2011. Fisher told Detective Santamala and his partner during the interview that he was to return the car on Thursday, July 28, 2011. On Friday, July 29, 2011, Fisher stated that he drove the Yukon to the area around 16th and Cumberland Streets in North Philadelphia. While there, Fisher, in exchange for crack cocaine, rented the Yukon to the dealer from whom he usually purchased his drugs. Fisher identified the dealer as "C" and later identified a photo of [Appellant]. On Saturday, July 30, 2011, Fisher contacted [Appellant] regarding return of the Yukon. At which point [Appellant] informed Fisher that he had been robbed at gunpoint and the culprits took everything from [Appellant], including the Yukon.

On August 2, 2011, based on information provided by Fisher, Detective Santamala created a wanted poster stating that [Appellant] was wanted for questioning with regard to the shooting death of the decedent. Detective Santamala told the officers patrolling the area to look for [Appellant] and bring him to the Homicide Unit, and to confiscate any and all cell phones in [Appellant's] possession when found.

On August 8, 2011, at approximately 7:30 P.M., [Appellant] was brought to homicide where he remained in a locked interview room until being interviewed by Detective Santamala. At

approximately 4:45 A.M. on August 9, 2011, [Appellant] was questioned by Detective Santamala regarding his possession of the Yukon and involvement in the death of Gary Wilson.[fn5] [Appellant] gave a statement to Detective Santamala and the interview ended at approximately 8:00 A.M. on August 9, 2011.

> [fn5] Gary Wilson, a friend of the decedent who had also been murdered, had allegedly been stealing from drug dealers in the area, according to [Appellant].

**Rannels**, 2014 WL 10917038 at *1-2 (record citations omitted).

We add that around the time of the interview of Fisher, Detective Thomas Gaul sent a subpoena, or exigent circumstances request, for Appellant's phone records to Appellant's wireless carrier. The detective received a response on July 31 or August 1, 2011. Detective Gaul then obtained for a search warrant for Appellant's phone on August 3, 2011. Further, during his August 8, 2011 interrogation, Appellant signed a consent form and provided a DNA sample.

After the Commonwealth's appeal, the matter returned to the trial court for Appellant's first trial. The trial court, with Judge Anhalt presiding, held a conference with the parties, at which the Commonwealth extended a plea offer to Appellant. During the discussions, Appellant noted that his counsel was supposed to litigate a suppression motion that Appellant did not voluntarily consent to the taking of his DNA sample. N.T., 5/23/16, at 13. The Commonwealth responded that Appellant already litigated a suppression motion before Judge Ransom, that Appellant signed a consent form to take the DNA sample, and that "it's inevitable discovery" because the Commonwealth "could get a court order today for his DNA." **Id.** at 18-19.

The trial court indicated that it would hold a suppression hearing.[7] **See id.** at 20. The court then briefly recessed the conference for Appellant to consider the plea offer, which Appellant rejected. **Id.** at 30. The trial court ended the conference without ruling on Appellant's request to suppress his DNA sample. **Id.** at 35.

On May 26, 2016, Appellant filed a motion to suppress his DNA sample that police obtained after his interrogation. Appellant also moved to suppress the information recovered from his cell phone pursuant to a search warrant.

On October 3, 2016, the parties appeared for jury selection in Appellant's first trial. After jury selection, Appellant litigated his suppression issue challenging probable cause to search his cell phone. N.T., 10/3/16, at 2, 201-11. Judge Anhalt issued her findings of fact and conclusions of law and

---

[7] During the discussions, Judge Anhalt told Appellant:

> [The Commonwealth is] saying that if I was to say that your consent for that DNA swab was not voluntarily given, I could order today that you give over -- without your consent I can order your DNA, and then they would test that again, I guess. I don't know why you would, but you could. And we are in the same position that we are in now. So anyway, I will hear it. If you want to litigate the motion, I suspect, I would have to, correct? It doesn't sound like it's something that -- it seems that the odds would be against you on that topic. Even if I did grant your motion it would be inevitable discovery . . . .

N.T., 5/23/16, at 19. Later, the court indicated that it would hear Appellant's motion but that the suppression of the DNA "more likely than not [was] going to be inevitable discovery." **Id.** at 21.

entered an order denying Appellant's "motion to suppress." Order, 10/3/16; N.T., 10/3/16, at 209-11.

After the jury hung and the declaration of a mistrial in Appellant's first trial, Appellant obtained new counsel who filed pretrial motions including motions to suppress information obtained from his cell phone, his DNA swab, and the DNA test results. *See* Omnibus Pre-Trial Mot., 6/7/18, at 4-5 (unpaginated); Mot. to Suppress Phone Location Data, 6/25/18; Mot. to Suppress DNA Swab, 7/12/18. In response, the Commonwealth filed a brief asserting that: (1) the police obtained Appellant's cell phone information pursuant to a search warrant and (2) Appellant's claim regarding the DNA evidence was previously litigated and, in any event, meritless because "a swab of [Appellant] would be inevitable discovery." Commonwealth's Letter Brief, 2/26/19, at 1-4 (unpaginated).

Judge Bright, the newly assigned trial judge, convened a hearing on Appellant's pretrial motions. The parties argued their respective positions concerning the suppression motions but did not present additional witnesses or evidence. In relevant part, Appellant's counsel summarized the procedural history before Judge Anhalt. N.T., 3/28/19, at 2-6. Appellant's counsel stated that although Judge Anhalt stated she would consider a motion to suppress Appellant's DNA sample, "[i]t doesn't seem like the motion was ever litigated." *Id.*

At the conclusion of the parties' arguments, the trial court decided Appellant's motion to suppress his DNA sample as follows:

- 13 -

> Based on what has been laid out by the Commonwealth in terms of the evidence linking [Appellant] to the crime, I would think that inevitable discovery would apply. Again, I believe that the law of concurrent jurisdiction applies to this matter. The issue has been addressed. Whether or not it was litigated or whether or not the motion was held or not, apparently Judge Anhalt believed she had enough information to make the ruling that it would've been inevitable discovery or authority to take this evidence. So based on that, I am going to deny your motion as to that portion.

*Id.* at 11-12. The trial court also denied Appellant's motions as to the phone data after hearing arguments from counsel regarding the subpoena issued before the police obtained a search warrant. *Id.* at 32.

In its Rule 1925(a) opinion, the trial court reiterated that it denied Appellant's suppression motions "based on the fact that the evidence would be inevitably discovered and on the basis of concurrent jurisdiction, due to Judge Anhalt's prior ruling on the question." Trial Ct. Op. at 4. The trial court cited the trial record and added that "[h]ere, the eyewitness Fisher provided Appellant's phone number as well as the information relating to the car found on the scene, from which physical evidence was obtained. Fisher's statement would have led to the discovery of the evidence Appellant wishes to suppress." *Id.* (record citations omitted).

On appeal, Appellant contends the police obtained "additional physical evidence as a result of th[e] illegal statement" that Judge Ransom suppressed for a violation of *Miranda*. Appellant's Brief at 10. Appellant notes that "there was no suppression hearing on the fruits [of the poisonous tree] issue so the failure to suppress is not supported by the [r]ecord." *Id.* Appellant claims that although Judge Bright determined that inevitable discovery would apply

- 14 -

as to the DNA evidence before the second trial, the trial court ignored "other physical evidence" that the police obtained from Appellant based upon his initial interrogation. *Id.* at 13. Appellant emphasizes that the trial court did not hold an evidentiary hearing before his second trial and claims that "[t]he Commonwealth did not and could not carry its burden of inevitable discovery in this context and that [the Commonwealth's argument] is . . . based upon presumption only." *Id.*

The Commonwealth responds that Appellant waived his arguments. Commonwealth's Brief at 9. The Commonwealth asserts that Appellant had an obligation to litigate the instant motions to suppress "either before Judge Ransom or when Judge Anhalt later invited him to do so." *Id.* The Commonwealth contends that Appellant cannot properly demand another suppression hearing after his first trial ended in a mistrial. *Id.*

The Commonwealth alternatively contends that Judge Bright properly denied Appellant's suppression motions because the *Miranda* violation did not taint the recovery of other physical evidence or information from his cell phone pursuant to a warrant. *Id.* at 10-11. Concerning Appellant's DNA sample, the Commonwealth argues that Appellant's consent to the DNA was valid and that he failed to establish that the *Miranda* violation tainted his consent. *Id.* at 11. The Commonwealth also contends that the trial court properly determined that the DNA evidence "would have inevitably come to light" based on the evidence linking Appellant to the crime. *Id.* at 12. The Commonwealth adds that because "this case commenced before [our Supreme Court's

decision in *In re L.J.*, 79 A.3d 1073 (Pa. 2013)[8]]," this Court may consider the entire record, including evidence from the trial proceedings. *Id.* at 9 n.7.

Generally, the following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Gray*, 211 A.3d 1253, 1260 (Pa. Super. 2019) (citation omitted).

It is well settled that "[a] criminal defendant with standing to pursue a motion to suppress in this Commonwealth has a right to compel the prosecution to prove its evidence was not obtained in violation of his constitutional rights." *Commonwealth v. Enimpah*, 106 A.3d 695, 703 (Pa. 2014); *see* Pa.R.Crim.P. 581(H). "Pennsylvania Rule of Criminal Procedure

---

[8] In *L.J.* our Supreme Court has held that the scope of reviewing a suppression claim is limited to the suppression record. *L.J.*, 79 A.3d at 1087 However, this holding applies prospectively to litigation commenced after October 30, 2013. *Id.* at 1089; *see also Commonwealth v. A. Fitzpatrick*, 181 A.3d 368, 373 n.6 (Pa. Super. 2018). Instantly, the charges against Appellant were filed in 2011.

581 'is designed to provide one single procedure for the suppression of evidence alleged to have been obtained in violation of the defendant's rights.'" *Commonwealth v. Sodomsky*, 137 A.3d 620, 626 (Pa. Super. 2016) (*en banc*) (quoting Pa.R.Crim.P. 581 cmt.).

Upon the filing of a suppression motion, the trial court shall hold a suppression hearing at which the Commonwealth bears the burden of establishing that the defendant's constitutional rights were not infringed. *See Enimpah*, 106 A.3d at 701; *see also* Pa.R.Crim.P. 581(H). At the conclusion of which the trial court shall enter a statement of its findings of fact and conclusions of law. *See* Pa.R.Crim.P. 581(I).

The Commonwealth's burden of proof under Rule 581 "is triggered only when the defendant states specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." *Commonwealth v. Freeman*, 128 A.3d 1231, 1241-42 (Pa. Super. 2015) (citation omitted and formatting altered); *see* Pa.R.Crim.P. 581(D). "Thus, when a defendant's motion to suppress does not assert specifically the grounds for suppression, he or she cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion." *Id.* at 1242 (citations omitted).

Generally, a defendant must also file a suppression motion in an omnibus pretrial motion within thirty days of arraignment. *See* Pa.R.Crim.P. 579(A), 581(B). The comments to Rule 581 state the failure to file a suppression motion "within the appropriate time limit constitutes a waiver of

the right to suppress." Pa.R.Crim.P. 581 cmt. However, the trial court has the discretion to consider a defendant's supplemental suppression motion when "the opportunity did not previously exist, or the interests of justice otherwise require" consideration of the motion. Pa.R.Crim.P. 581(B); *Sodomsky*, 137 A.3d at 626. This Court reviews the trial court's consideration of an untimely supplemental suppression motion for an abuse of discretion. *Commonwealth v. Johonoson*, 844 A.2d 556, 561 (Pa. Super. 2004).

> Of further relevance to this appeal, our Supreme Court has stated:

> The general rule is that when reprosecution subsequent to the grant of a motion for mistrial is not barred, the proceedings revert to a pretrial status as though the original trial had never occurred. However, this court has held that not all of the original trial court's pretrial rulings are subject to relitigation. *Commonwealth v. Starr*, [664 A.2d 1326 (Pa. 1995)]. In *Starr*, we held that rulings relating to legal questions determinative of the "law of the case" should not be reopened.

*Commonwealth v. Mulholland*, 702 A.2d 1027, 1035-36 (Pa. 1997) (some citations omitted and formatting altered). "Judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." *Commonwealth v. Turner*, 73 A.3d 1283, 1286 (Pa. Super. 2013) (citation and internal quotation marks omitted).

However, the law of the case doctrine "applies only when a court is later asked to consider the **same** question decided by another court of equivalent or higher jurisdiction." *See Commonwealth v. Wright*, 14 A.3d 798, 817 (Pa. 2011) (citation omitted and emphasis in original). This Court, for

example, has stated that a defendant may litigate a new suppression motion after the grant of a new trial "if there has been no prior determination of the issue." **Commonwealth v. Taggart**, 435 A.2d 604, 605 (Pa. Super. 1981) (citation omitted).

Initially, we reject the Commonwealth's waiver argument. Appellant's suppression motions before Judge Bright specified the evidence he sought to suppress and the grounds for his claim.[9] **See Freeman**, 128 A.3d at 1241-42. Further, Judge Bright had the discretion to consider Appellant's supplemental suppression motions "in the interests of justice."[10] **See** Pa.R.Crim.P. 581(B); **Sodomsky**, 137 A.3d at 626.

---

[9] We note, however, that Appellant did not seek the suppression of "other physical evidence" before the trial court, and instead focused his supplemental suppression motions before Judge Bright on his phone information and his DNA sample. **See** Omnibus Pre-Trial Mot., 6/7/18, at 4-5; Mot. to Suppress Phone Location Data, 6/25/18; Mot. to Suppress DNA Swab, 7/12/18. Therefore, we will not address Appellant's claim that he was entitled to suppression hearing concerning "other physical evidence."

[10] The trial court did not explain its decision to review the trial record in order to consider Appellant's suppression motions which it ultimately determined were previously litigated before Judge Anhalt and therefore subject to coordinate jurisdiction. However, we note that Appellant asserted that his prior counsel failed to litigate suppression claims before Judge Ransom. **See** N.T., 3/28/19, at 6. Additionally, the record establishes that Appellant's counsel filed a motion to suppress Appellant's DNA swab but did not litigate that issue before Judge Anhalt. **See** N.T., 10/3/16, at 204-04. These circumstances establish a basis for Judge Bright to consider his suppression motions in the interests of justice rather than dismissing them as untimely.

Appellant's suppression motions before Judge Bright also raised different issues than the trial court previously considered.[11] **See Taggart**, 435 A.2d 604, 605 (Pa. Super. 1981). As noted above, neither Judge Ransom nor Judge Anhalt entered a ruling concerning Appellant's present claims challenging his DNA sample and his phone records. **Compare** Omnibus Pre-Trial Mot., 6/7/18, at 4-5; Mot. to Suppress Phone Location Data, 6/25/18, and Mot. to Suppress DNA Swab, 7/12/18, **with** N.T., 6/4/13 at 4-5 (indicating that Appellant sought suppression of his statement to police due to a **Miranda** violation); N.T., 5/23/16, at 35 (indicating that Judge Anhalt discussed but did not rule on Appellant's supplemental motion); N.T., 10/3/16, at 204-05 (indicating that Appellant sought suppression of his phone records based on a four-corners challenge to the affidavit of probable cause). Therefore, to the extent the trial court relied on the coordinate jurisdiction rule, we are constrained to conclude that the trial court erred. **See Wright**, 14 A.3d at 817; **Turner**, 73 A.3d at 1286-87.

To the extent the trial court denied Appellant's motions without a hearing, this Court's decision in **Commonwealth v. Long**, 753 A.2d 272 (Pa. Super. 2000), is instructive. In **Long**, the defendant initially filed a suppression motion challenging the legality of a blood draw following his arrest for driving under the influence. **Long**, 753 A.2d at 275. At the suppression

_____

[11] Although the Commonwealth raised the issue of previous litigation and coordinate jurisdiction in the trial court, it does not repeat those arguments in its brief to this Court.

hearing, the trial court denied the defendant's claim that his consent to the blood draw was invalid.  *Id.*  At some time before trial, the Commonwealth disclosed the existence of a video from the arresting officer's dash cam recorder.  *Id.*  After the Commonwealth presented its case at trial, the defendant orally requested suppression based on the video.  *Id.*  After reviewing the video, the trial court summarily denied Appellant's oral suppression hearing.  *Id.* at 275-76.

Following his conviction, the defendant in *Long* appealed and asserted, in part, that the trial court erred in denying his oral suppression motion.  *Id.* at 276, 279.   The *Long* Court concluded that the trial court did not abuse its discretion considering the defendant's oral suppression motion, but that "[i]t was not proper for the [t]rial [c]ourt to summarily consider and rule upon [the defendant's] suppression motion without first conducting . . .  a hearing."  *Id.* at 280.

The *Long* Court reiterated:

A trial court, by excusing a party's failure to comply with the timing requirements of Rule 323(b),[12] cannot thereby disregard the remaining rules governing suppression motions.  Specifically, when a defendant files a motion to suppress, the trial judge is required to set a time for a hearing, either prior to or at trial "which shall afford the attorney for the Commonwealth a reasonable

---

[12] Present Rule 581 took effect in April 2001, after our Supreme Court amended and renumbered prior Rule 323.  The amendments resulting in Rule 581, modified the rules governing the timeliness of a motion to suppress.  However, it appears that the amendments did not affect the prior case law discussing the interests of justice exception for considering supplemental suppression motions under former Rule 323 and Rule 581.  *See Commonwealth v. Downey*, 39 A.3d 401, 404 (Pa. Super. 2012).

opportunity for investigation . . . ." Pa.R.Crim.P. 323(e). At that hearing, the Commonwealth bears the burden of going forward and establishing that the challenged evidence was not obtained in violation of the defendant's rights. [Pa.R.Crim.P.] 323(h).

In this case, the trial judge presided not over a suppression hearing, but over a trial. At that trial, the Commonwealth sought to present sufficient evidence to satisfy the elements of the crimes charged. At a suppression hearing, however, the Commonwealth would seek to present sufficient evidence to establish that the officer, at the time of the stop, had reasonable and articulable grounds to suspect a violation of the Vehicle Code . . . .

\* \* \*

The trial court was incapable of properly ruling on the suppression motion absent a suppression hearing. In so acting, the trial court abused its discretion.

*Id.* at 281 (some citations omitted). The *Long* Court noted that the trial court "simply viewed the videotape and denied" the defendant's oral suppression motion without making findings of fact or conclusions of law based on the video. *Id.* Therefore, this Court concluded that the record was incomplete, vacated the judgment of sentence, and remanded the case for a new suppression hearing.[13] *Id.* at 281-82.

_____

[13] Specifically, the *Long* Court noted that the defendant's oral suppression motion "had apparent merit" based on the video and the arresting officer's testimony and that the trial court, and that the Commonwealth did not have an "opportunity to present evidence at a formal hearing to prove by a preponderance of the evidence that the stop of [the defendant's] vehicle was lawful." *Id.* at 280-82. The *Long* Court remanded the matter with instructions for the trial court to hold a new suppression hearing, reinstate the judgment of sentence if the trial court denied the defendant's suppression claim, or hold a new trial if the trial court granted the suppression motion. *Id.* at 282.

Here, similar to **_Long_**, we are constrained to conclude here that the trial court erred in ruling on Appellant's supplemental suppression motions without holding a hearing. **_See id._** at 281-82; **_see also_** Pa.R.Crim.P. 581(E). As discussed above, the trial court had the discretion to consider the merits of Appellant's motions in the interest of justice and erred in applying the coordinate jurisdiction rule. The trial court only considered the parties' arguments without holding a hearing for the parties to develop a proper suppression record. **_See Long_**, 753 A.2d at 281-82; **_see also_** Pa.R.Crim.P. 581(E)-(H). Therefore, we are constrained to conclude that the trial court abused its discretion in deciding Appellant's suppression motions without a holding a hearing.[14] **_See Long_**, 753 A.2d at 281.

For these reasons, we vacate the judgment of sentence and remand this matter for a new suppression hearing. **_See id._** at 282.

### Legality of Sentence—Conspiracy

Notwithstanding our conclusion that Appellant is entitled to a new suppression hearing, we briefly address Appellant's third issue. Appellant argues that the trial court imposed an illegal sentence when it sentenced him

---

[14] We acknowledge the Commonwealth's reliance on pre-**_L.J._** law to assert that the trial court properly denied Appellant's suppression motions based on the entire record, including the trial record. **_See L.J._**, 79 A.3d at 1081, 1085-89. However, the Commonwealth does not cite, nor have we found, any case law upholding a trial court's suppression ruling based on its review of the trial record without holding a hearing on a defendant's previously unlitigated suppression claim that would have provided the opportunity for the Commonwealth and the defendant to present evidence on the motion pursuant to Rule 581(E)-(H). **_Cf. Long_**, 753 A.2d at 281-82.

to mandatory life in prison for conspiracy to commit first-degree murder. Appellant's Brief at 14. He contends that under 18 Pa.C.S. § 1102(c), the maximum possible sentence for conspiracy to commit murder is forty years when there is serious bodily injury. *Id.* The trial court agrees that the life sentence was illegal and suggests that this Court may amend the conspiracy sentence to twenty to forty years' imprisonment. *See* Trial Ct. Op. at 5.

It is well settled that "[i]f a court imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and should be remanded for correction." ***Commonwealth v. Infante***, 63 A.3d 358 (Pa. Super. 2013) (citation and quotation marks omitted). As Appellant's claim challenges the legality of his sentence, our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Cardwell***, 105 A.3d 748, 750 (Pa. Super. 2014).

Section 1102 of the Crimes Code governs the maximum sentence permissible for a conviction of conspiracy to commit murder.

> Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder, murder of an unborn child or murder of a law enforcement officer where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

18 Pa.C.S. § 1102(c).

Here, Appellant was convicted of conspiracy to commit murder.

Pursuant to Section 1102(c), the maximum permissible sentence is twenty years, or forty years when serious bodily injury occurs. *See generally Commonwealth v. King*, 234 A.3d 549, 562 (Pa. 2020). Accordingly, we agree that Appellant's sentence of life imprisonment for conspiracy to commit murder is illegal.

## Conclusion

For these reasons, we conclude that Appellant's challenge to Detective Verrecchio's testimony lacks merit. However, we conclude that Appellant is entitled to a new suppression hearing and that the trial court imposed an illegal sentence for conspiracy to commit murder. Therefore, we vacate the judgment of sentence in part and remand this case for a new suppression hearing. If the trial court denies Appellant's supplemental suppression motions following the new hearing, the court shall proceed to a resentencing hearing. If the trial court determines that Appellant is entitled to the suppression of the challenged evidence, the court shall proceed to a new trial on all charges.

Judgment of sentence vacated. Case remanded for a new suppression hearing with instructions. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *10/20/2021*